UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERCA, N.A., | Case No. 2:16-C-2211 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| RIDGEVIEW HOMEOWNERS ASSOCIATION, INC., et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BOA") motion for summary judgment. (ECF No. 37). Defendants Ridgeview Homeowners Association, ("the HOA") and A Scimitar LLC ("Scimitar") filed responses (ECF Nos. 44, 46), to which plaintiff replied (ECF No. 52).

Also before the court is defendant HOA's motion for summary judgment. (ECF No. 36). Plaintiff filed a response (ECF No. 45), to which defendant replied (ECF No. 51).

Also before the court is defendant Scimitar's motion for summary judgment. (ECF No. 38). Plaintiff filed a response (ECF No. 45), to which defendant replied (ECF No. 53).

**I.  Facts**

This case involves a dispute over real property located at 1927 Scimitar Drive #32, Henderson, Nevada, 89011 (the "property").

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

*a. Plaintiff's interest in the property*

On June 23, 2006, Sonya and Alex Diaz ("the borrowers") obtained a loan in the amount of $140,000 from plaintiff to purchase the property. (ECF No. 1). The loan was secured by a deed of trust recorded on June 28, 2006.[1] *Id.*

On March 23, 2011, the deed of trust was assigned to BAC Home Loans Servicing, LP, via an assignment of deed of trust (recorded on March 25, 2011). *Id.*; (ECF No. 37-3). On December 5, 2014, BAC Home Loans Servicing, LP, assigned the deed of trust to Ventures Trust 2012-I-H-R by MCM Capital Partners LLC ("MCM") (recorded on February 18, 2015). (ECF No. 37-4). On May 23, 2016, MCM assigned the deed of trust to plaintiff. (ECF No. 37-5).

*b. Defendants' interest in the property*

On July 12, 2011, Nevada Association Services ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,753.80. *Id.* On August 26, 2011, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $2,883.60. *Id.*

On October 28, 2011, plaintiff requested a ledger from the HOA, through NAS, that identified the super-priority amount owed to the HOA. *Id.* In the request, plaintiff stated "[Nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment] is the amount [BOA] should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA." (ECF No. 37-10 at 14). Neither the HOA nor NAS provided a ledger. *Id.* Based on a ledger from a different property under the same HOA, plaintiff calculated the alleged superpriority portion of the lien to be $1,350. *Id.* On December 1, 2011, plaintiff tendered $1,350 to the HOA through NAS. *Id.* The HOA refused the payment. *Id.*

---

[1] The deed of trust was rerecorded on March 17, 2011 to add the missing legal description. (ECF No. 1).

On August 6, 2012, 2012, NAS recorded a notice of trustee's sale, stating an amount due of $5,887.52. *Id.* On March 19, 2014, NAS recorded a second notice of trustee's sale, stating an amount due of $9,839.24 and an anticipated sale date of April 11, 2014. *Id.*

On July 29, 2014, the HOA foreclosed on the property. (ECF No. 1). Scimitar purchased the property at the foreclosure sale for $11,100. *Id.* A foreclosure deed in favor of Scimitar was recorded on July 29, 2014. *Id.*

*c. Procedural background*

On September 20, 2016, BOA filed the underlying complaint, alleging four causes of action: quiet title against all defendants; breach of NRS 116.1113 against the HOA and NAS; wrongful foreclosure against the HOA and NAS; and injunctive relief against Scimitar. *Id.* On October 14, 2016, Scimitar filed counterclaims against plaintiff for quiet title and declaratory relief. (ECF No. 12).

In the instant motions, plaintiff, defendant HOA, and defendant Scimitar all move for summary judgment in their favor. (ECF Nos. 36, 37, 38).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

**James C. Mahan
U.S. District Judge**

- 3 -

1  directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

As an initial matter, the court takes judicial notice of the following recorded documents: the first deed of trust (ECF No. 37-2); the assignments of the deed of trust; (ECF Nos. 37-3, 37-4, 37-5); the notice of delinquent assessment (ECF No. 37-6); the notice of default and election to sell (ECF No. 37-7); the notices of trustee's sale (ECF Nos. 37-8, 37-9); and the trustee's deed upon sale (ECF No. 37-11). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

### a. Plaintiff's claim for injunctive relief

Claim (4) of plaintiff's complaint will be dismissed without prejudice as the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

### b. Scimitar's claim for declaratory relief

"[A] 'claim' for declaratory relief is not a substantive cause of action at all; it is merely a prayer for a remedy." *Pettit v. Fed. Nat'l Mortg. Ass'n*, no. 2:11-cv-00149-JAD-PAL, 2014 WL 584876 (D. Nev. Feb. 11, 2014); *see Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, no. 2:15-cv-02257-JCM-CWH, 2017 WL 1902158, at *4 (D. Nev. May 9, 2017) (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)); *see also Centex Homes v. Everest Nat'l Ins. Co.*, no. 2:16-cv-01275-GMN-CWH, 2017 WL 4349017 (D. Nev. Sept. 29, 2017) ("[T]he Court will interpret Plaintiff's claim for declaratory relief as a request

for a remedy rather than a separate cause of action . . . .").[2] As Scimitar's second cause of action requests a remedy of declaratory relief, and is not a substantive cause of action, the court will dismiss the claim to the extent it purports to create a cause of action. *See Wells Fargo*, 2017 WL 1902158, at *4.

   *c. The parties' claims for quiet title*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on a quiet title claim, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[3] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

---

[2] The court in *Centex* denied defendant's motion to dismiss plaintiff's claim for declaratory relief due to its interpretation of plaintiff's claim as a request for a remedy rather than a separate cause of action. 2017 WL 4349017, at *5. This court will grant defendant's motion to dismiss, but will consider the allegations within plaintiff's first and second causes of action to the extent they request the remedy of declaratory relief. The court does not see a practical difference between the two approaches.

[3] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

**James C. Mahan**
**U.S. District Judge**

- 6 -

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. BOA*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[4] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notices of trustee's sale, and the foreclosure deed upon sale. *See* (ECF No. 37-6, 37-7, 37-8, 37-9, 37-11). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle Scimitar and the HOA to success on the parties' quiet title claims. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether BOA has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

BOA raises the following grounds in support of its motion for summary judgment: the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); rejected tender; commercial reasonability under *Shadow Wood*; and Scimitar's failure to qualify as a bona fide

purchaser. (ECF No. 37). As set forth in further detail below, the court finds that BOA has failed to set forth sufficient grounds to justify setting aside the foreclosure sale and has not raised a genuine issue to withstand summary judgment.

### *1. Due process*

BOA argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 37). BOA further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 7.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BOA has failed on both prongs.

Here, BOA has failed to show that it did not receive proper notice. The fact that BOA contacted NAS regarding the pending foreclosure sale demonstrates that BOA had notice of the sale. Therefore, BOA's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, BOA confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*,

547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Accordingly, BOA has failed to show that summary judgment is proper based on *Bourne Valley*.

### 2. Tender

BOA contends that the deed of trust still encumbers the property because the HOA/NAS wrongfully rejected BOA's tender of the superpriority amount. (ECF No. 37). The court disagrees, as BOA did not tender the amount set forth in the notice of default. Rather, BOA stated that it would pay a lesser amount, consisting of its calculation of nine months of assessments. (ECF No. 37).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."); *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("*SFR* characterized the superpriorty piece as including 'the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges.'").

BOA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded August 26, 2011, set forth an amount due of $2,883.60. (ECF No. 37). Rather than tendering the amount due so as to preserve its interest in the property and then later seeking a refund of any difference, BOA tendered $1,350 based on its assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BOA paid the amount set forth in the notice of default, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BOA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BOA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, BOA's argument regarding rejected tender does not entitle it to judgment as a matter of law.

### 3. *Commercial reasonability*

BOA argues that the foreclosure sale was commercially unreasonable because the property sold at approximately 14.5% of its fair market value,[5] which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 37). BOA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 37 at 18) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[6]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528,

---

[5] Here, the foreclosure sale price was $11,100 and the fair market value as estimated by plaintiff's expert was $76,500. (ECF No. 37).

[6] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BOA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BOA relies on its assertion that BOA tendered the superpriority amount to show fraud, unfairness, or oppression. *See* (ECF No. 37). However, as the discussed in the previous section, the amount due was set forth in the notice

of default. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BOA chose to offer a payment of $1,350 based on the belief that it could tender a lesser amount to avoid foreclosure. This is insufficient to satisfy the requirements for sufficient tender.

BOA also argues that this court's precedent in *ZYZZX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), requires a finding of fraud, unfairness, or oppression in this case based on the CC&R's governing the property. Although BOA argues that the "the HOA inaccurately represented its lien as subordinate to the first deed of trust in its recorded CC&Rs," this court has previously distinguished *ZYZZX2* from facts similar to those presented here. *See Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the legal impact of NRS 116.1104 on declarations regarding lien priority made in CC&Rs and noting that the HOA in *ZYZZX2* also sent out misleading mailings). Thus, BOA's argument based on *ZYZZX2* is unpersuasive.

Accordingly, BOA's commercial reasonability argument fails as a matter of law as it has not set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *4. Bona fide purchaser status*

Because the court concludes that BOA failed to properly raise any equitable challenges to the foreclosure sale, the court need not address the parties' arguments regarding whether Williston was a bona fide purchaser for value. *See Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.3.

### IV. Conclusion

In light of the foregoing, Scimitar and the HOA have shown that they are entitled to judgment as a matter of law. The parties have provided the recorded foreclosure deed in Scimitar's

James C. Mahan
U.S. District Judge

- 14 -

favor, which is conclusive of the recitals contained therein, and has shown that Scimitar's interest in the property is superior to that of BOA's interest. On the other hand, the court finds that BOA has failed to show that it is entitled to judgment as a matter of law on its quiet title claim against Scimitar and the HOA or Scimitar's counterclaim. Further, BOA has provided no grounds to justify setting aside the foreclosure sale. Therefore, the court will grant Scimitar (ECF No. 38) and the HOA's (ECF No. 36) motions for summary judgment and deny BOA's motion for summary judgment (ECF No. 37).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion for summary judgment (ECF No. 36) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Scimitar's motion for summary judgment (ECF No. 38) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that BOA's motion for summary judgment (ECF No. 37) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Scimitar shall prepare a proposed judgment consistent with this order and submit it to the court within thirty (30) days of the filing of this order.

DATED May 8, 2018.

_____
UNITED STATES DISTRICT JUDGE